**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION OF SCHOLARS,<br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF ENERGY;<br>JENNIFER GRANHOLM, in her official capacity as Secretary of Energy; and<br>GERALDINE RICHMOND, in her official capacity as Under Secretary for Science and Innovation,<br><br>*Defendants*. | No.   25-cv-00077 |

**COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      The Department of Energy Office of Science ("SC") is the largest source of funding for basic and advanced scientific research. For decades, its funding has enabled scientific breakthroughs and human advancement in fields such as high-energy physics, computational science, microelectronics, and energy technologies.

2.      Beginning in fiscal year 2023, SC adopted an ideological litmus test for researchers who apply for SC research grants.

3.      The Promoting Inclusive and Equitable Research ("PIER") Plan requirement mandates that every applicant for SC research grants must commit to how the applicant will promote diversity, equity, and inclusion in research projects. The PIER Plan requirement is more appropriately characterized as a Diversity, Equity, and Inclusion ("DEI") Statement: a bald attempt to impose ideological orthodoxy and conformity. Exhibit 1 (Hedley Declaration) ¶ 4(b) & (f) and Exhibits 1-b and 1-f.

4.      The National Association of Scholars ("NAS") is a tax-exempt non-profit organization that seeks to reform higher education and adamantly opposes DEI statements, especially with respect to higher education and advanced scientific research because it emphasizes group identity, rather than prioritizing scientific merit and sound academic inquiry. Plaintiff challenges the PIER Plan requirement as a violation of its and its members' First Amendment rights because the PIER Plan requirement imposes an unconstitutional condition on obtaining SC research funding. It is a "basic First Amendment principle that freedom of speech prohibits the government from telling people what they must say." *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* (*AOSII*), 570 U.S. 205, 213 (2013) (cleaned up). And the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." *United States v. American Library Assn., Inc.*, 539 U.S. 194, 210 (2003).

5. The PIER Plan requirement has nothing to do with the advancement of scientific research. Instead, the requirement is a burden that will erode the integrity of fundamental and applied scientific research. Instead of advancing science and academic freedom, the PIER Plan requirement prioritizes support for fashionable DEI causes and ideological conformity.

6. The PIER Plan requirement falls outside the scope of the statutes authorizing SC research funding. The inclusion of the PIER Plan requirement amounts to SC "compelling a grant recipient to adopt a particular belief as a condition of funding" which "plac[es] a condition on the recipient of the subsidy rather than on the particular program." *Rust v. Sullivan*, 500 U.S. 173, 197 (1991).

7. Conditioning federal grants on factors unrelated to the underlying authorizing statute renders such conditions illegitimate. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). Here, DEI interests and collateral social missions are absent from the statutory framework authorizing SC research grants.

8. The PIER Plan requirement also conflicts with the accompanying regulations governing SC research grants. *See* 10 C.F.R. §§ 605.9 (Application Requirements) and 605.10 (Application Evaluation and Selection). It imposes a new duty and requirement on grant applicants that previously had not been included in the regulations concerning grant applications and selection. Thus, addition of the PIER Plan requirement is a substantive rule change that should have been subjected to the notice-and-comment requirements of the Administrative Procedures Act. 5. U.S.C. § 553.

9. SC's imposition of the PIER Plan requirement is also beyond the Defendants' statutory authority. The statutes authorizing SC grant funding are aimed expressly at furthering basic and advanced scientific research to foster energy independence and strengthen the nation. Injecting DEI requirements into applications for research grants is at odds with Congress's express intent to provide merit-based SC research funding.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and has authority to grant the relief requested under the Administrative Procedure Act, 5 U.S.C. §§ 701-06 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. To the extent that it goes beyond the APA, this suit brings cognizable non-statutory claims. *E.g. Apter v. HHS*, 80 F.4th 579, 588-91 (5th Cir. 2023) (*ultra vires* claim).

11. Venue is proper in this district under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e) because Defendants are United States agencies or officers sued in their official capacities, Plaintiff has at least one member that is a resident of this judicial district who is directly impacted by Defendants' actions and no real property is involved in this action, and a substantial part of the events or omissions giving rise to the Complaint occur within this district.

## PARTIES

12. Plaintiff NAS is a tax-exempt organization under Internal Revenue Code Section 501(c)(3) with offices in New York City. NAS has over 3000 members who are researchers, professors, and academics in multiple disciplines and colleges and universities across the United States. NAS's mission is to uphold "the standards of a liberal arts education that fosters intellectual freedom, searches for truth, and promotes virtuous citizenship." Exhibit 2 (Wood Decl.) ¶¶ 8, 9.

13. Defendant Jennifer Granholm is the Secretary of Energy. She is being sued in her official capacity.

14. Defendant Dr. Geraldine Richmond is the Undersecretary of Energy for Science and Innovation. She is being sued in her official capacity.

15. Defendant United States Department of Energy is an executive agency of the federal government.

## FACTS

### The National Association of Scholars

16. Plaintiff NAS is a tax-exempt organization with over 3000 members. NAS is dedicated to fostering intellectual freedom and the traditional standards of a liberal arts education. Exhibit 2 ¶¶ 8, 9.

17. NAS members are professors, faculty and researchers at colleges and universities across the United States engaged in a broad variety of academic disciplines.

18. NAS publishes a quarterly journal devoted to exploring issues within contemporary higher education. NAS also publishes studies and reports regarding curricula, policies, and practices within higher education with the aim of improving the quality of education at colleges and universities.

19. NAS and its members also engage in advocacy including submitting amicus briefs in court cases, defending freedom of speech and conscience of educators and students. Exhibit 2 ¶ 10.

20. The continued encroachment of Diversity, Equity, and Inclusion programs and requirements within higher education has been a key concern of NAS and a focus of its advocacy. This includes requiring mandatory DEI statements from faculty job applicants, requiring formal DEI statements for tenure or promotion, and the growth of administrative DEI bureaucracies within institutions with increasing power to influence curricula and policies governing the conduct of students and faculty. Exhibit 2 ¶¶ 11-12.

21. NAS as an organization has opposed DEI as a vague, ill-defined concept that stifles open and frank debate and the free exchange of ideas and is a pernicious influence within academia, especially at colleges and universities. Exhibit 2 ¶ 12.

22. DEI runs contrary to the notions of merit, fairness, and equality that are important to NAS and its members, and to the success of their work because it entails treating people as members of a group rather than as individuals who are judged by their merit or individual

accomplishments. NAS opposes the ideology of DEI that imposes a hierarchy of victims and oppressors based on race, gender, and sexual orientation. NAS also believes that DEI imposes an ideological orthodoxy that is fundamentally at odds with what NAS believes is the mission of higher education and what its members work towards: the search for truth that arises out of a diversity of viewpoints. Exhibit 2 ¶¶ 11-12.

23.     NAS has members that have applied for, and in several instances, received research grant funding from the federal government, including SC, as well as from other federal agencies such as the Department of Defense (and its branch components), the National Science Foundation, ("NSF"), the National Institutes of Health ("NIH"), the Food and Drug Administration ("FDA"), and the National Aeronautical and Space Administration ("NASA"), among others.

24.     NAS has members that would like to apply for SC grants in the future but do not believe they should be compelled to incorporate a PIER Plan statement into a grant application that would require the members to promote a DEI message that they fundamentally oppose. NAS members' ability to participate in federal funding of basic and advanced scientific research should not be conditioned on being compelled to make a statement in adherence to a DEI ideology and orthodoxy that is disconnected from, and indeed crowds out, the scientific merit or value of the proposed research.

25.     Member A has been an NAS member for 13 years. Member A is an engineering professor at a public university in Texas within the Austin Division of the Western District of Texas. Member A has received funding from the Department of Energy regarding technology transfer issues which resulted in two published academic papers. Member A has also received research funding from the NSF. Within the past year Member A applied to a branch of the DoD for research funding but eventually was informed that there was no longer funding available. Member A is currently performing research on an atmospheric phenomenon that could be relevant to the energy industry and is a viable topic for SC research grant funding. Member A, however, will not apply to SC for research funding because he objects to the Pier Plan requirement and DEI

statements more broadly. Member A believes that DEI unnecessarily politicizes scientific research and undermines the goal of scientific excellence. *See* Exhibit 3 (Decl. of NAS Member A).

26. Member B has been an NAS member for approximately 20 years. Member B is an engineering professor at a tier one research university on the East Coast. Member B has a history of applying for and receiving federal research grants including funding from the Department of Energy, NSF, and NIH. Member B is interested in revisiting some earlier research that had been funded by a grant from the Department of Energy. Member B views SC as a potential source of funding for this research but is not pursuing an SC grant because of opposition to the PIER Plan requirement. Member B believes that DEI unnecessarily politicizes scientific research and undermines the goal of scientific excellence. *See* Exhibit 4 (Decl. of NAS Member B).

27. NAS Members A and B have standing because they are research scientists who have previously participated in research projects funded by the Department of Energy, and/or other government funded science research projects funded by agencies such as the NSF or Department of Defense. These and other NAS members have a track record of seeking and obtaining federal research grants, including from SC, and are "able and ready to apply" for SC research grants, but for the PIER Plan requirement, with which they object to as an infringement on their First Amendment rights. *Carney v. Adams*, 592 U.S. 53, 64 (2020). NAS and its members fall within the zone of interests of the process involving SC's grantmaking.

### Congressional funding of scientific research sponsored by DoE

28. Congress initially chose to fund basic and advanced scientific research focused on atomic energy. Congress designated the Atomic Energy Commission to oversee federal grants aimed at atomic energy research. Atomic Energy Act of 1954, 83 P.L. 703, 68 Stat. 919, §§ 21, 31-33 (Aug. 30, 1954).

29. Derived from the Atomic Energy Act is 42 U.S.C. § 2051, Research and Development Assistance, which authorizes research grants primarily focused on atomic and nuclear energy.

7

30. In 1977 Congress created the Department of Energy, and the role of the Atomic Energy Commission overseeing the funding of research grants transferred to the Office of Energy Research which subsequently was renamed the Office of Science. 79 Fed. Reg. 75871, 76046 (Dec. 19, 2014) (renaming Office of Energy Research to Office of Science).

31. Congress explicitly declared a policy concerning the development and utilization of energy resources and that there should be a focus on basic research and development. 42 U.S.C. § 5801. That statute contains no reference to a social mission or anything that could be construed as incorporating DEI goals.

32. Section 5801 introduces Part 73 of Title 42, which is aimed at atomic energy research and related issues. The only provision in Part 73 that makes any reference to a collateral social or DEI goal is an explicit prohibition on sex discrimination. 42 U.S.C. § 5891.

33. Section 5901 of Title 42 introduces Part 74 which relates to non-nuclear energy research and development. Like § 5801, the section sets forth Congress's explicit intent to fund non-atomic energy research and development.

34. Section 5902 includes Congress's statement of policy on non-nuclear energy research and references "use of energy resources by socially and environmentally acceptable means" but otherwise is silent with respect to DEI goals or social mission.

35. The implementing regulations covering SC grant applications and funding are 10 C.F.R. § 605.9, Application Requirements, and 10 C.F.R. § 605.10, Application Evaluation and Selection.

36. Section 605.9(b) states that "each new or renewal application . . . must include" the following: (1) an application face page, Form 4650.2; (2) a detailed description of the proposed project including objectives and plans for accomplishing the project; (3) detailed information concerning the background and experience of the principal investigator(s); and (4) detailed budget information.

37. Nothing in § 605.9 includes a requirement to incorporate DEI goals in the research projects, which is now mandated by the PIER Plan requirement.

38. Section 605.10(d) lists, "in descending order of importance," the five criteria the Department of Energy shall use to evaluate applications: (1) scientific and technical merit or educational benefits of the project; (2) appropriateness of the proposed method; (3) competency of applicant's personnel and resources; (4) appropriateness of the proposed budget; and (5) "[o]ther appropriate factors established and set forth by ER [former name of SC] in a notice of availability or in a specific solicitation."

39. The PIER Plan requirement conflicts with relevant Office of Management and Budget regulations which require that federal programs "must be designed with clear goals and objectives that facilitate the delivery of meaningful results *consistent with* the Federal authorizing legislation of the program." 2 C.F.R. § 200.202(a)(1) (emphasis added).

40. SC imposed the PIER Plan Requirement for all new SC grant proposals beginning in Fiscal Year 2023. The SC website states that "PIER Plans should describe the activities and strategies applicants will incorporate to support diverse participation and safe, professional, equitable, and inclusive environments in their research projects." Exhibit 1-a. "PIER Plans are evaluated as part of the merit review process and will be used to inform funding decisions." *Id.*

41. SC mandates that all new grant applications include a PIER Plan. Applications that do not include a PIER Plan will not be considered.

42. The PIER Plan requirement does not apply to applications for supplemental funding for existing grants or applications for support for conferences.

43. The PIER Plan requirement was never published in the Federal Register for purposes of seeking notice and comment, thereby depriving organizations such as NAS and its members of the opportunity to object to the inclusion of the requirement in grant applications or to offer alternative suggestions.

44. The PIER Plan requirement not only conflicts with the statutes authorizing SC research funding, but also serves as an impediment to the pursuit of meaningful scientific research. The PIER Plan Requirement will deter qualified and competent researchers from applying for SC grants because they object to the PIER Plan requirement (like NAS Members A and B). And researchers who reluctantly pursue SC funding with PIER Plan strings attached will surely be distracted by prioritizing irrelevant DEI factors rather than focusing on scientific advancement.

## CAUSES OF ACTION

**Claim I: The PIER Plan requirement is an unconstitutional infringement of free speech**

45. Plaintiff NAS reasserts and realleges paragraphs 1 through 44 as if fully set forth therein.

46. Under the First Amendment to the United States Constitution, "Congress shall make no law…abridging the freedom of speech."

47. Under the Administrative Procedures Act, the Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege or immunity…" 5 U.S.C. § 706(2)(B).

48. Defendants' introduction of the PIER Plan requirement as part of SC grant applications burdens NAS members' freedom of speech and freedom of conscience under the First Amendment of the United States Constitution.

49. Defendants are requiring NAS members to express ideas and values with which they disagree as a condition for receiving funding from SC for scientific research. This is an unconstitutional form of compelled speech and is unconstitutional even when such a requirement is tied to a government benefit to which the speaker (e.g., the Plaintiff's members) are not entitled.

50. The PIER Plan requirement compels applicants for SC research grants to express agreement with and promote views on social justice, diversity, equity, and inclusion that are outside the scope of the federal grant funding scheme that Congress created.

51. The PIER Plan requirement unconstitutionally leverages scarce federal science funding to force grant applicants to express agreement with the Defendants' ideology regarding DEI.

52. The PIER Plan requirement places NAS members who oppose DEI statements such as the Pier Plan requirement but who would like to pursue SC funding in an untenable position. An applicant can either submit an honest application that will not satisfy SC evaluators, or one can lie or suppress his or her honest views. Silence and dissent are not options if the applicant wishes to obtain the SC funding.

53. Because the PIER Plan requirement mandates that NAS members affirm or promote DEI goals that are inherently separate, distinct, and inconsistent with Congress's underlying intent with respect to SC funding of basic and advanced scientific research, it imposes a condition on research grant funding that would be unconstitutional if done outright.

54. NAS is entitled to declaratory relief and preliminary and permanent injunctive relief invalidating and restraining implementation and application of the PIER Plan requirement. Unless Defendants are enjoined from enforcing the PIER Plan requirement, NAS members will suffer irreparable constitutional harm.

**Claim II: The PIER Plan requirement violates the APA
because there is no statutory authority for imposing such a requirement**

55. Plaintiff NAS reasserts and realleges paragraphs 1 through 54 as if fully set forth therein.

56. Under the Administrative Procedures Act, the Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . in excess of statutory jurisdiction, authority, or limitations or short of statutory right." 5 U.S.C. § 706(2)(A) & (C).

57. The statutes authorizing SC research funding reflect Congress's intent to fund basic and advanced scientific research in fields of atomic and non-atomic energy. 42 U.S.C. §§ 5801,

5901. The statutory scheme authorizing SC grants are devoid of any reference to DEI goals or a social justice mission.

58. The Department of Energy, like all administrative agencies, is a "creature[] of statute," and accordingly "possess[es] only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 117 (2022); *see also, e.g.*, *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act … unless and until Congress confers power upon it.").

59. Defendants' introduction of the PIER Plan requirement was arbitrary, capricious and not in accordance with the law and is in excess of Congress's delegated authority when it crafted the statutory scheme aimed at funding basic and advanced scientific research related to the energy needs of the United States.

60. The goals of the PIER Plan requirement are unrelated, and indeed contrary to Congress's mandate as reflected in the statutes authorizing SC grant funding. Thus, the PIER Plan requirement must be set aside because it is contrary to law and exceeds statutory authority. NAS is therefore entitled to relief pursuant to 5 U.S.C. §§ 702, 706.

**Claim III: The PIER Plan requirement violates the APA
because it is a substantive rule change implemented without notice and comment**

61. Plaintiff NAS reasserts and realleges paragraphs 1 through 60 as if fully set forth therein.

62. Under the Administrative Procedures Act, the Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

63. The introduction of the PIER Plan requirement as part of applying for an SC grant is an agency action that amounts to a substantive or legislative rule because imposes a new duty upon SC grant applicants and is not a mere interpretation of existing law or regulation. *See Flight*

12

*Training Int'l, Inc. v. FAA*, 58 F.4th 234, 241 (5th Cir. 2023) ("The hallmark of a legislative rule is that it modifies or adds to a legal norm.").

64. Because the addition of the PIER Plan requirement is a substantive rule, Defendants were first required to adhere to the rule-making procedures of the APA, including proposing the change and allowing a sufficient notice-and-comment period. 5 U.S.C. § 553.

65. Courts are obligated to set aside substantive agency rulemaking that fails to adhere to the notice-and-comment requirements of § 553.

66. The PIER Plan requirement should be declared unlawful, set aside, and enjoined from enforcement, implementation, and being given effect in any manner.

## REQUEST FOR RELIEF

This Court is authorized to set aside the challenged agency actions, hold them unlawful, grant preliminary and permanent injunctive relief, and award the declaratory and injunctive relief requested below. 5 U.S.C. §§ 553, 701-06; 28 U.S.C. §§ 1361, 2201-02 (2018); Fed. R. Civ. Pro. 57. Therefore, NAS respectfully requests the following relief:

   A. A declaratory judgment that the PIER Plan requirement violates the First Amendment to the United States Constitution and is contrary to statutory law;

   B. An order preliminarily enjoining Defendants and their agents from taking any action to enforce or apply the PIER Plan requirement;

   C. An order declaring that the Defendants did not observe statutory requirements under the Administrative Procedures Act when introducing the PIER Plan requirement to the SC grant application process;

   D. An order vacating and setting aside the PIER Plan requirement under 5 U.S.C. § 706(2) and permanently enjoining Defendants from taking any action to enforce or apply the requirement;

   E. Award Plaintiff its reasonable costs, including attorneys' fees incurred in bringing this action under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

F. Any other legal or equitable relief to which NAS may show itself to be justly entitled.

Dated: January 16, 2025                Respectfully submitted,

*/s/ Neville S. Hedley*
Neville S. Hedley
Anna St. John (*pro hac vice* forthcoming)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
ned.hedley@hlli.org
(312) 342-6008

*Attorneys for Plaintiff National Association of Scholars*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.

DATED: January 16, 2025

*(s) Neville S. Hedley*

Neville S. Hedley
