**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION OF SCHOLARS,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF ENERGY, et al.<br><br>*Defendants*. | No. 25-cv-00077-DAE |

**DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

I.      The Office of Science's Grant Funding ................................................................ 1

II.     Institution of PIER Plan Requirement ................................................................. 2

III.    Rescission of PIER Plan Requirement ................................................................. 3

IV.     This Lawsuit .......................................................................................................... 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.      Plaintiff's complaint is moot because Defendants have already rescinded the challenged PIER Plan requirement. ..................................................................... 5

II.     The mootness exception for voluntary cessation does not apply ........................ 9

CONCLUSION .................................................................................................................... 11

## INTRODUCTION

Plaintiff seeks declaratory and injunctive relief against a policy that no longer exists. Because this case is not live, this Court should dismiss Plaintiff's complaint as moot.

The Department of Energy's ("DOE") Office of Science previously required that applicants applying for research grant funding submit a Promoting Inclusive and Equitable Research ("PIER") Plan alongside their grant applications. Such PIER Plans were to include a description of how the research proposal would support diverse participation and inclusive research environments. On January 20, 2025, however, President Donald Trump issued Executive Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing* ("EO 14151"). *See* 90 Fed. Reg. 8339 (Jan. 29, 2025). Seven days later, the Office of Science rescinded the PIER Plan requirement.

Plaintiff's complaint seeks only declaratory and injunctive relief related to the now-defunct PIER Plan requirement. This case is therefore moot because there remains no relief that this Court can grant to Plaintiff. None of Plaintiff's members are subject to any alleged injury. And, contrary to Plaintiff's suggestion, the mootness exception for voluntary cessation does not apply simply where a defendant has the theoretical ability to reimpose a similar policy in the future. Rather, the exception applies only where a defendant has ceased challenged activity as a litigation strategy—not, as here, where Defendants rescinded the challenged PIER Plan requirement following an executive order unrelated to this litigation.

## BACKGROUND

### I.  The Office of Science's Grant Funding

The Department of Energy ("DOE") is statutorily directed to provide for "research and development and training activities . . . by private or public institutions or persons" related to

nuclear and atomic energy. 42 U.S.C. § 2051(a). DOE has promulgated regulations pursuant to that directive at Part 605 of Title 10 of the Code of Federal Regulations. *See* 10 C.F.R. Pt. 605.

In particular, DOE's Office of Science administers grant awards for research, training activities, and other related activities. *See id.* § 605.1; *id.* § 605.5. The Office of Science solicits applications for grant funding by publishing notices in the Federal Register and in other professional and trade media. *See id.* § 605.8(d). Grant applications must include certain substantive requirements, including a detailed description of the proposed project; detailed information about the principal investigator(s); detailed information about the facilities and experience of the applicant; a detailed budget; and any additional information deemed "essential." *See id.* § 605.9(b), (g).

DOE evaluates grant applications based on a variety of factors. DOE considers five primary criteria: (1) the "[s]cientific and/or technical merit or the educational benefits of the project;" (2) the proposed method or approach; (3) the applicant's personnel and resources; (4) the proposed budget; and (5) "[o]ther appropriate factors established and set forth by [the Office of Science] in a notice of availability or in a specific solicitation." *Id.* § 605.10(d). In addition, DOE considers "other available advice or information," including "program policy factors"; "the importance of the proposed application to [the Office of Science's] mission, and fund availability"; "[c]ost reasonableness and realism"; and, for renewal applications, "the recipient's performance under the existing award." *Id.* § 605.10(e)–(g).

## II. Institution of PIER Plan Requirement

Effective Fiscal Year 2023, all Office of Science grant funding solicitations included a requirement that applicants submit a PIER Plan as an appendix to their project proposals. *See* Decl. of Neville S. Hedley, Ex. 1-a at 5, 7, ECF No. 1-1. The Office of Science provided that such

PIER Plans "should describe the activities and strategies applicants will incorporate to support diverse participation and safe, professional, equitable, and inclusive environments in their research projects." *Id.*, Ex. 1-a at 5. By way of example, the Office of Science explained:

> Plans may include, but are not limited to: strategies for enhanced recruitment of undergraduate students, graduate students, and early-stage investigators (postdoctoral researchers, and others), including individuals from diverse backgrounds and groups historically underrepresented in the research community; strategies for creating and sustaining a positive, inclusive, safe, and professional research and training environment that fosters a sense of belonging among all research personnel; and/or training, mentoring, and professional development opportunities.

*Id.*, Ex. 1-b at 7. The Office of Science noted that it would evaluate PIER Plans as part of the merits review process. *See id.*, Ex. 1-b at 8.

### III. Rescission of PIER Plan Requirement

On January 20, 2025, President Trump issued Executive Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing* ("EO 14151"). *See* 90 Fed. Reg. at 8339.[1] As relevant here, EO 14151 directed all agencies to:

> terminate, to the maximum extent allowed by law . . . all ''equity action plans,'' ''equity'' actions, initiatives, or programs, ''equity-related'' grants or contracts; and all [diversity, equity, and inclusion ('DEI')] or [diversity, equity, inclusion, and accessibility ('DEIA')] performance requirements for employees, contractors, or grantees.

*Id*.

Seven days later, on January 27, 2025, the Office of Science announced—via email bulletin sent to all Office of Science employees and applicants, and via public notice on DOE's website— that it was "immediately ending the requirement for [PIER] Plans." *See* Office of Science,

---

[1]    The Executive Order was first published online on January 20, 2025. *See* White House, *Ending Radical and Wasteful Government DEI Programs and Preferencing* (Jan. 20, 2025), https://perma.cc/PD5G-DBV6.

*Executive Order Update to PIER Plan Requirement* (Jan. 27, 2025), https://perma.cc/33CS-RPPC (attached as Exhibit A).[2]  The bulletin explained that all open grant funding solicitations had or would be amended to remove the PIER Plan requirement.  *See id*.  For applications that had already been submitted to the Office of Science with a PIER Plan, reviewers were instructed to not read or comment on the PIER Plans.  Alternatively, if the solicitation was still open, applicants were given the option to resubmit a new application with the PIER Plan removed.  *See id*.

## IV. This Lawsuit

On January 16, 2025—four days before President Trump issued EO 14151—Plaintiff filed this lawsuit challenging the PIER Plan requirement.  ECF No. 1.  Plaintiff is the National Association of Scholars, an organization purportedly comprised of professors, faculty, and researchers at colleges and universities in the United States.  *See* Compl. ¶ 16.  Plaintiff alleges that the (now-rescinded) PIER Plan requirement violates the Free Speech Clause of the First Amendment; exceeds DOE's statutory authority; and violates the APA because it was not promulgated through notice-and-comment procedures.  *See id.* ¶¶ 45–66.

Plaintiff seeks prospective relief in the form of declaratory and injunctive relief.  *Id.* at 13 (Request for Relief).  In particular, Plaintiff seeks: a declaration that the PIER Plan violates the First Amendment and the APA and exceeds statutory authority; an order preliminarily and permanently enjoining Defendants from "taking any action to enforce or apply the PIER Plan requirement"; and an order "vacating and setting aside the PIER Plan requirement."  *Id*.  Plaintiff does not seek any retrospective relief.

Plaintiff identifies two of its own, anonymous members, "Member A" and "Member B,"

---

[2]    This same announcement was subsequently posted on the Office of Science's online blog on January 28, 2025.  *See* Executive Order Update to PIER Plan Requirement (Jan. 28, 2025), https://perma.cc/FW2T-HWKX.

who are research scientists who have allegedly applied for and received research grants from the Office of Science in the past. *Id.* ¶¶ 25–27. Plaintiff alleges that Member A and Member B have both indicated—as of the date of filing the complaint—that they would not apply for additional research grants from the Office of Science because they "object[] to the PIER Plan requirement and DEI statements." *Id.* ¶¶ 25–26. Plaintiff does not allege that Member A or Member B have any currently pending applications with the Office of Science.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that a court dismiss a claim where the lacks subject-matter jurisdiction over the dispute. *See* Fed. R. Civ. P. 12(b)(1). Courts must consider a motion for lack of subject-matter jurisdiction under Rule 12(b)(1) before any motion on the merits, given that subject-matter jurisdiction is required to determine the validity of any claim. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). "Courts may take judicial notice of matters of public record when deciding a motion to dismiss." *Ambler v. Williamson Cnty., Texas*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *4 (W.D. Tex. Feb. 25, 2021). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

## ARGUMENT

Plaintiff's complaint is moot because Defendants have rescinded the challenged PIER Plan requirement and there remains no relief that this Court can grant. Moreover, contrary to Plaintiff's misguided suggestion, the mootness exception for voluntary cessation does not apply here.

**I.  Plaintiff's complaint is moot because Defendants have already rescinded the challenged PIER Plan requirement.**

"Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "Even when a plaintiff

has standing at the outset, '[t]here must be a case or controversy through all stages of a case.'" *Fontenot v. McGraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted)); *see also Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (explaining that the mootness doctrine "ensures federal courts are only deciding live cases or controversies").

"Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Fontenot*, 777 F.3d at 747 (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). Because a challenge is moot when the court cannot grant effectual relief to the prevailing party, "a case challenging a [government policy] usually becomes moot if the challenged [policy] has expired or been repealed." *Spell*, 962 F.3d at 179. After all, "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* In short, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quotation marks omitted).

Consistent with these principles, the Fifth Circuit has repeatedly confirmed that when a policy is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that policy, mootness is "the default." *Freedom From Religion Found., Inc. v. Abbott*, No. 21-50469, 2023 WL 565082, at *4 (5th Cir. Jan. 27, 2023); *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672 (5th

6

Cir. 2023) ("There is no need to enjoin policies that no longer exist."); *Texas Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 414 (5th Cir. 1999) ("Reconsideration of agency actions by the implementing agency can moot issues otherwise subject to judicial review because the reviewing court can no longer grant effective relief.").

There is no reason to depart from that authority here. The Office of Science's rescission of the PIER Plan requirement ends any live controversy between Plaintiff and Defendants. Indeed, there is no longer any relief that this Cort can grant. The rescission provides Plaintiff with the equivalent of the injunctive relief it sought in its complaint: Defendants are no longer "taking any action to enforce or apply the PIER Plan requirement." Compl. at 13 (Request for Relief). Plaintiff's requested injunctive relief is thus no longer available. Similarly, Plaintiff cannot seek an order "vacating and setting aside the PIER Plan requirement" given that the PIER Plan requirement has already been rescinded. Plaintiff's requested declaratory relief is also necessarily moot, as Plaintiff cannot sustain a lawsuit based merely on a desire to prove that the PIER Plan requirement was unlawful prior to its rescission. *See St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it."); *Yarls*, 905 F.3d at 909; *see also, e.g.*, *Swindle v. Vasquez*, No. 1:21-CV-955-RP, 2023 WL 4277342, at *3 (W.D. Tex. June 29, 2023) (finding moot plaintiff's challenge to policy seeking injunctive and declaratory relief).

The only remaining request in Plaintiff's complaint, besides a request for attorneys' fees, is a catch-all request for "[a]ny other legal or equitable relief to which [Plaintiff] may show itself to be justly entitled." Compl. at 14 (Request for Relief). But Plaintiff does not allege that it has suffered any other injury that merits this Court's intervention. *See, e.g.*, *Ward v. Santa Fe Indep. Sch. Dist.*, 34 F. App'x 150 (5th Cir. 2002) ("To hold [that a claim for nominal damages keeps

7

alive a claim challenging a rescinded policy] would allow appellants to litigate the constitutionality of a policy, and a controversy, which simply no longer exists.").

Moreover, there is no longer any injury to Plaintiff. Plaintiff's standing is apparently based on alleged harm to its purported members, *i.e.*, associational standing. Associational standing "is derivative of the standing of the [organization's] members, requiring that they have standing and that the interests the [organization] seeks to protect be germane to its purpose." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). Here, Plaintiff alleges that Member A and Member B have suffered injury because their "object[ion] to the PIER Plan requirement and DEI statements" preclude them from applying for additional research grants from the Office of Science. Compl. ¶¶ 25–26. This injury, to the extent it ever existed, has dissipated with the rescission of the PIER Plan requirement. Plaintiff's members no longer have a live injury. Accordingly, because Plaintiff's standing is predicated on its members' purported injury, Plaintiff no longer has a live challenge.[3]

---

[3]    The Fifth Circuit has not expressly addressed the effect on an organization's associational-standing claim when the individual members upon whom that claim is based cease to have a live case or controversy. This Court, however, should follow the approach of other Courts of Appeals that have held that such claims become moot. *See, e.g.*, *Munsell v. Department of Agriculture*, 509 F.3d 572, 584 (D.C. Cir. 2007); *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 930–33 (7th Cir. 2013); *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021). This approach is most "in line with the purpose of Article III." *See S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Just.*, No. 0:22-CV-1338-JDA-PJG, 2024 WL 5153170, at *9 (D.S.C. Dec. 18, 2024) (collecting cases)

At minimum, the Court should follow the approach of other Courts of Appeals that have held that such claims are moot unless the organization can identify other members who continue to experience the same alleged harm, or unless the organization can establish a reasonable probability that other members will continue to experience the alleged harm. *See, e.g.*, *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1037 (6th Cir. 2022). Plaintiff cannot identify any other members, even in generality, who continue to experience the harm that Member A and Member B have allegedly suffered—*i.e.*, choosing not to apply for grant funding based on objection to the PIER Plan requirement and DEI—because the rescission of the PIER Plan requirement has mooted that harm for all individuals.

There is thus no live dispute in this litigation, and the Court can no longer provide Plaintiffs with "any effectual relief." *Spell*, 962 F.3d at 179 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).  Accordingly, this case is moot.

## II.  The mootness exception for voluntary cessation does not apply.

Plaintiff incorrectly suggests that the mootness exception for voluntary cessation applies. *See* Schedule Recommendation at 4, ECF No. 12.  In particular, Plaintiff argues that the exception applies because Defendants have not issued any new policy that "would prevent them from reinstating" the PIER Plan requirement in the future. *Id*.  But Plaintiff misunderstands this exception.  As the Fifth Circuit has repeatedly explained, "[i]t is black-letter law that the government's mere 'ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception.'" *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023) (quoting *Freedom From Religion Found.*, 58 F.4th at 833)); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("We will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct.").

Indeed, the central inquiry in determining whether the exception for voluntary cessation applies is "whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished."  *Yarls*, 905 F.3d at 910; *see also U.S. Navy SEALs 1–26*, 72 F.4th at 674 ("Litigation posturing typically involves some sign of bad faith or insincerity.").  "[G]overnmental entities bear a 'lighter burden'" in establishing that the exception for voluntary cessation does not apply.  *U.S. Navy SEALs 1-26*, 72 F.4th at 673.  In other  words, courts presume "that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325; *see also Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) ("In an ordinary

case, 'subsequent events' would have to make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' [Plaintiff's] argument, however, ignores the 'lighter burden' that government entities bear in proving that the challenged conduct will not recur once the suit is dismissed as moot." (quoting *Sossamon*, 560 F.3d at 325)).

Plaintiff offers nothing to combat the presumption that Defendants' "formally announced changes" are "not mere litigation posturing." *Sossamon*, 560 F.3d at 325. To the contrary, Defendants "most assuredly did not alter [their own course] in order to avoid litigation." *Am. Bar Ass'n*, 636 F.3d at 648. Rather, Defendants rescinded the PIER Plan requirement following President Trump's issuance of EO 14151. *See supra* pp. 3–4. There is no basis to suggest that the rescission of the PIER Plan is pretextual or that the same or a substantially similar requirement will recur. To the extent that Plaintiff speculates that Defendants may impose a similar requirement in the future, Plaintiff can challenge the specific contours of that speculative policy if and when it occurs. But Plaintiff's speculative future harm is not a proper, ripe vehicle for an Article III lawsuit. *See, e.g.*, *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (noting the ripeness doctrine's concern with avoiding "abstract disagreements over administrative policies"); *U.S. Navy SEALs 1–26*, 72 F.4th at 674.

The Supreme Court's decision in *FBI v. Fikre*, 601 U.S. 234, 241 (2024), has not changed the longstanding, cross-circuit doctrine providing for the presumption that the Government is unlikely to resume ceased challenged conduct. *Fikre* merely confirmed that voluntary cessation moots a case only if "the defendant can show that the practice cannot 'reasonably be expected to recur,'" which "standard holds for governmental defendants no less than for private ones." *Id.* at 235 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). *Fikre* also turned on context-specific reasons that the Court found the Government's

assurances lacking—issues not present here.  In particular, that case turned on the Government's

inability, due to the secrecy inherent in national security matters, to explain why it had taken the

challenged action (placement on the No Fly List) and subsequently to explain why it had ceased

the challenged action (removal from the No Fly List).  *See id.* at 241–42.  The Court thus had no

way to know what actions might cause the Government to place the plaintiff back on the list.  Here,

in contrast, the mootness issue is straightforward.  The Office of Science rescinded the PIER Plan

following EO 14151.  Plaintiffs cannot resuscitate their moot claims by citing "hypothetical

questions" about some future policy that simply "pique [their] curiosity."  *Id.* at 241.

      For these reasons, Plaintiffs cannot overcome the presumption that the Office of Science's

rescission of the PIER Plan moots this case.  The "'challenged practice'" has been "discontinued,"

and "a live controversy no longer exists."  *Freedom From Religion Foundation*, 2023 WL 565082,

at *5.

## CONCLUSION

      For the foregoing reasons, the Court should dismiss Plaintiff's complaint for lack of

subject-matter jurisdiction.


Dated: March 31, 2025                Respectfully submitted,

                                     YAAKOV M. ROTH
                                     Acting Assistant Attorney General

                                     JOSEPH E. BORSON
                                     Assistant Branch Director

                                     */s/ Cassandra M. Snyder*
                                     CASSANDRA M. SNYDER
                                     Trial Attorney (D.C. Bar No. 1671667)
                                     U.S. Department of Justice
                                     Civil Division
                                     Federal Programs Branch

1100 L Street NW
Washington, DC 20005
(202) 451-7729
cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 31, 2025, I electronically filed this brief with the Clerk of

the Court for the United States District Court for the Western District of Texas by using the

CM/ECF system. Counsel in the case are registered CM/ECF users and service will be

accomplished by the CM/ECF system.

/s/ *Cassandra M Snyder*
CASSANDRA M. SNYDER
U.S. Department of Justice
