IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF SCHOLARS, | § § § | No. 1:25-CV-77-DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| UNITED STATES DEPARTMENT OF ENERGY, JENNIFER GRANHOLM, in her official capacity as Secretary of Energy, AND GERALDINE RICHMOND, in her official capacity as Under Secretary for Science and Innovation, | § § § § § § § § | |
| Defendants. | § § § | |

## ORDER GRANTING MOTION TO DISMISS

The matter before the Court is Defendants United States Department of Energy ("DOE"), Jennifer Granholm, in her official capacity as Secretary of Energy, and Geraldine Richmond, in her official capacity as Under Secretary for Science and Innovation's (collectively, "Defendants") Motion to Dismiss. (Dkt. # 13.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda filed in support of and in opposition to the motion, the Court, for the reasons that follow, **GRANTS** the motion to dismiss.

BACKGROUND

On January 16, 2025, Plaintiff National Association of Scholars ("NAS") filed suit in this Court seeking declaratory and injunctive relief related to the DOE Office of Science's then-requirement that applicants applying for research grant funding submit a Promoting Inclusive and Equitable Research ("PIER") Plan alongside their grant applications.  (Dkt. # 1.)  The PIER Plans were to include a description of how the research proposal would support diverse participation and inclusive research environments.  (Id.)  According to NAS's complaint, "the PIER Plan is more appropriately characterized as a Diversity, Equity, and Inclusion ('DEI') Statement."  (Id. at 2.)

NAS contends that it is a "tax-exempt non-profit organization that seeks to reform higher education and adamantly opposes DEI statements . . . because it emphasizes group identity, rather than prioritizing scientific merit and sound academic inquiry."  (Id.)  NAS's complaint alleges that the Pier Plan: (1) is an unconstitutional infringement of free speech pursuant to the First Amendment; (2) requirement violates the Administrative Procedures Act ("APA") because there is no statutory authority for imposing such a requirement; and (3) requirement also violates the APA because it is a substantive rule change implemented without notice and requirement.  (Id.)  NAS seeks prospective relief in the form of declaratory and injunctive relief.  NAS has identified two of its own, anonymous

members who are research scientists who have allegedly applied for and received research grants from the DOE Office of Science in the past, but they would not apply for additional grants because they object to the PIER Plan requirement and DEI statements.  (Id.)

   After NAS filed suit in this case, on January 20, 2025, President Trump issued Executive Order 14151, entitled Ending Radical and Wasteful Government DEI Programs and Preferencing ("EO 14151").  On January 27, 2025, the DOE Office of Science announced via an email bulletin sent to its employees and applicants, as well as public notice on DOE's website, that it was "immediately ending the requirement for [PIER] Plans."  (Dkt. # 13-1.)  The bulletin explained that all open grant funding solicitations had or would be amended to remove the PIER Plan requirement.  (Id.)  For applications that had already been submitted with a PIER Plan, reviewers were instructed not to read or comment on the PIER Plans.  (Id.)  Alternatively, if the solicitation was still open, applicants were given the option to resubmit a new application with the PIER Plan removed.  (Id.)

   On March 31, 2025, Defendants filed a motion to dismiss NAS's complaint on the basis that Defendants have rescinded the PIER Plan requirement and the claims are now moot.  (Dkt. # 13.)  On April 14, 2025, NAS filed a

response in opposition.  (Dkt. # 15.)  On April 28, 2025, Defendants filed their

reply.  (Dkt. # 19.)

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a

complaint for "lack of subject-matter jurisdiction."  When evaluating a Rule

12(b)(1) motion, the Court may dismiss a suit "for lack of subject matter

jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the

complaint supplemented by undisputed facts evidenced in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed

facts."  Freeman v. United States, 556 F.3d 326, 334 (5th Cir. 2009) (quoting

Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

## ANALYSIS

Defendants move to dismiss NAS's claims on the basis that the

complaint in this case is moot because Defendants have rescinded the challenged

PIER Plan requirement and there remains no relief this Court can grant.  (Dkt. # 13

at 7.)  Defendants also contend that the voluntary cessation doctrine does not apply

in this case.  (Id.)

In response, NAS contends that Defendants' post-litigation actions

cannot moot NAS's complaint and that its voluntary cessation after being sued

does not render the case moot.  (Dkt. #15 at 2.)  NAS maintains that Defendants

4

have offered no assurance that the PIER Plan requirement will permanently cease and that Defendants could readily revert back to the requirement without any notice or process.  (Id.)

Article III standing at the start of litigation is not enough—the controversy must remain live throughout the suit's existence.  Yarls v. Bunton, 905 F.3d 905, 909 (5th Cir. 2018).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights."  Id. at 909 (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)) (internal quotation omitted).

The voluntary-cessation exception to mootness requires courts to examine defendant-induced mootness with caution.  Id. at 910.  Generally, voluntary conduct does not moot a case unless the defendant demonstrates that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Freedom from Religion Found., Inc. v. Abbott, 58 F.4th 824, 833 (5th Cir. 2023) (quoting Sossamon v. Lone Star State of Tex., 560 F.3d 316, 325 (5th Cir. 2009), aff'd on other grounds sub nom. Sossamon v. Texas, 563 U.S. 277 (2011)); Franciscan All., Inc. v. Becerra, 47 F.4th 368, 376 (5th Cir. 2022). The Fifth Circuit has described this as a "stringent" standard.  Speech First v. McCall, 138 F.4th 219, 223 (5th Cir. 2025).  When considering whether voluntary

conduct moots a case, courts strive to determine whether the defendant's actions
are simply litigation posturing or actually extinguish the controversy. Yarls, 905
F.3d at 910.

But when a governmental entity rather than another kind of
defendant voluntarily ceases possibly wrongful conduct, courts extend the
defendant some solicitude.[1] Id. (citing Sossamon, 560 F.3d at 325). "So,
'[w]ithout evidence to the contrary, [courts] assume that formally announced
changes to official governmental policy are not mere litigation posturing.'" Id. at
910 (first alteration in original) (quoting Sossamon, 560 F.3d at 325); but see West
Virginia v. Envtl. Prot. Agency, 597 U.S. 697 (2022) (enforcing heavy burden in a
case where government "nowhere suggest[ed] that it would not reimpose the
challenged regulations if the litigation were resolved in its favor, and "vigorously
defend[ed] the legality of such approach."); Fenves, 979 F.3d at 328. "Among
other things, the government's ability to reimplement the statute or regulation at
issue is insufficient to prove the voluntary-cessation exception." Freedom from
Religion Found., Inc., 58 F.4th at 833.

---

[1] The Court notes however that this "relaxed standard has not been applied to
voluntary cessation by a public university," and that the Fifth Circuit explicitly has
not adopted it in that setting. Speech First, Inc. v. Fenves, 979 F.3d 319, 328 (5th
Cir. 2020); see also McCall, 138 F.4th at 223.

6

Defendants argue that its formally announced changes are not mere litigation posturing because they rescinded the PIER Plan requirement following President Trump's issuance of EO 14151, and not in response to this lawsuit. (Dkt. # 13 at 12.) Whether it may again be imposed in the future, according to Defendants is mere speculation which is not proper for an Article III lawsuit. (Id.) The Court agrees. "When governmental officials voluntarily cease potentially wrongful conduct, [courts] 'presume that [they], as public representatives, act in good faith." Ass'n of Am. Physicians & Surgeons Educ. Found. V. Am. Bd. of Internal Med., 103 F.4th 383, 395 (5th Cir. 2024) (quoting Freedom From Religion Found. v. Abbott, 58 F.4th 824, 832 (5th Cir. 2023)).

Additionally, the Fifth Circuit has stated that "[i]t is black-letter law that the government's mere 'ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception.'" U.S. Navy SEALs 1-26 v. Biden, 72 F.4th 666, 674 (5th Cir. 2023) (quoting Freedom From Religion Found., 58 F.4th at 833). Therefore, although it is possible for the DOE to reinstate the PIER Plan requirement for grant applications, it is too speculative to overcome the mootness doctrine. This is true even if the government "possesses the power to reenact" the requirement. Thomas v. Bryant, 938 F.3d 134, 144 n.21 (5th Cir. 2019). A hypothetical threat to Plaintiffs' rights in the future is not

enough to invoke this Court's jurisdiction.  See Alabama ex rel. v. Baxley v.

Woody, 473 F.2d 10, 14 (5th Cir. 1973).

The Court further concludes that DOE's conduct does not "raise[]

suspicion[] of 'litigation posturing.'"  Yarls, 905 F.3d at 910.  "Litigation posturing

typically involves some sign of bad faith or insincerity."  Navy SEALs, 72 F.4th at

674 (citing Texas v. Biden, 20 F.4th 928, 962–64 (5th Cir. 2021), rev'd on other

grounds, 597 U.S. 785 (2022) (finding voluntary cessation where government

"repeatedly exhibited gamesmanship in its decisionmaking" by hiding evidence

and engaging in "eleventh-hour" policy changes); Opulent Life Church v. City of

Holly Springs, 697 F.3d 279, 284 (5th Cir. 2012) (amending challenged law "the

night before oral argument" did not moot case); Sossamon, 560 F.3d at 325

(requiring "evidence that the voluntary cessation is a sham for continuing possibly

unlawful conduct")).  The Court sees "no signs of such gamesmanship here," see

id., especially where the PIER Plan was rescinded in response to the President's

Executive Order and the lack of any significant evidence that it was rescinded in

direct response to the instant lawsuit.  See Spell v. Edwards, 962 F.3d 175, 178–79

(5th Cir. 2020) (clarifying that voluntary cessation will not apply if the change in

policy was "predetermined," or in "response to litigation") (citing Trump v.

Hawaii, 583 U.S. 941 (2017)); Yarls, 905 F.3d at 910.

Still, NAS contends that the PIER Plan requirement has not been rescinded, only suspended.  (Dkt. # 15 at 4.)  Thus, NAS argues that Defendants have not met their burden to establish with "absolute" certainty to satisfy the mootness threshold.  (Id.)  NAS also asserts that ongoing litigation in federal court challenging EO 14151 and its implementation suggests that it is possible the PIER Plan requirement could be reinstated should that litigation prove successful.  (Id. at 5–6.)

First, the Court considers NAS's argument that the PIER Plan might be reinstated if litigation challenging EO 14151 succeeds to be doubly speculative. This argument asks the Court to speculate both on the outcome of the EO 14151 litigation and on the DOE's decision whether to reinstate the PIER Plan requirement, based on the uncertain outcome of that litigation.  "And speculation is insufficient to satisfy the voluntary-cessation exception."  Freedom From Religion Foundation, 58 F.4th at 834.  Likewise, contrary to NAS's argument, the Court does not interpret the language in the DOE Office of Science's bulletin as merely a suspension of the PIER Plan requirement rather than a rescission.  While the bulletin mentions only the "suspension" of DEI policies, it explicitly states that the "Office of Science is *immediately ending* the [PIER Plan] requirement."  (Dkt.

# 13-1 at 3 (emphasis added).)  Thus, the language in the bulletin indicates a definitive action rather than a temporary pause.  Cf. West Virginia, 597 U.S. at 697.

In conclusion, several factors point towards mootness here.  See Fenves, 979 F.3d at 328 (discussing factors that can overcome the presumption of governmental good faith in policy rescission, including: (1) no controlling statement of future intention, (2) the change in conduct is suspiciously timed, and (3) the defendant continues to defend the challenged behavior).  First, this does not appear to be the kind of voluntary policy change that the voluntary-cessation doctrine targets.  The rescission of the PIER Plan requirement was done to comply with EO 141151—not so Defendants could moot out this case and then resume the requirement in their grant applications.  Cf. id. (holding that "the suspicious timing of the change" weighed against mootness).  Thus, there is no indication of litigation posturing or gamesmanship.  See U.S. Navy Seals 1–26, 72 F.4th at 674–75; cf. Louisiana v. Envtl. Prot. Agency, 712 F. Supp. 3d 820, 847 (W.D. La. 2024) ("[I]t is abundantly clear that the EPA was litigation posturing considering the timing and abrupt closing of the Complaints, its absence of a statement to not attempt to enforce its disparate-impact and cumulative-impact mandates against the State, and the EPA's defense of the challenged policy after the supposed mooting event."); Netflix, Inc. v. Babin, 641 F. Supp. 3d 319, 332–33 (E.D. Tex. 2022).

Second, it is clear that not only is the PIER Plan requirement terminated for future applications, but the bulletin also instructs reviewers not to read or comment on PIER Plans that have already been submitted and that for solicitations that remain open, it instructs applicants to resubmit an application with the PIER Plan removed.  Third, NAS has not presented any evidence that Defendants are still considering the PIER Plan in considering grant applications.  See Fenves, 979 F.3d at 328.  Given the foregoing, the Court finds the voluntary cessation exception does not apply here, and this case is moot and will be dismissed for lack of subject matter jurisdiction.[2]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss, and this case is **DISMISSED WITHOUT PREJUDICE** in its entirety for lack of subject matter jurisdiction.  (Dkt. # 13.)  The Clerk's Office is **INSTRUCTED** to **CLOSE THE CASE**.

---

[2] The Court also finds no merit in NAS's argument that its APA claim—that the PIER Plan requirement was imposed outside the notice and comment process—precludes a finding of mootness (see Dkt. # 15 at 2). While the Court will not assess the validity of this claim, it notes that the APA exempts from notice and comment "matters relating to . . . public property, loans, *grants*, benefits, or contracts."  5 U.S.C. § 553(a)(2) (emphasis added).  There can be no dispute that the PIER Plan requirement pertains to grants.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, October 27, 2025.

_____

David Alan Ezra
Senior United States District Judge